SIGNAL GASOLINE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47621.   Promulgated April 27, 1934.

*Ward Loveless, Esq.*, for the petitioner.

*Hartford Allen, Esq., J. A. Lyons, Esq.*, and *E. G. Sievers, Esq.*, for the respondent.

OPINION.

LANSDON: The respondent determined deficiencies in income tax for the years 1924, 1925, and 1926. In its appeal from such determinations the petitioner contended that its allowances for depletion in the taxable years had been erroneously reduced in the respective amounts of $45,876.06, $124,445.17, and $257,187.32. In *Signal Gasoline Corp.*, 25 B.T.A. 861, we held as to the principal issue that owners of casinghead gas contracts have no depletable interest in the oil and gas properties from which the wet gas is recovered and affirmed the determinations of the respondent. In due course the petitioner appealed from our decision as to the years 1925 and 1926. In *Signal Gasoline Corp.* v. *Commissioner*, 66 Fed. (2d) 886, the U.S. Circuit Court of Appeals for the Ninth Circuit reversed our decision, on the authority of *Palmer* v. *Bender*, 287 U.S. 551, and remanded the cause to us for computation of depletion allowances to which petitioner is entitled.

At the hearing for settlement under the mandate the parties submitted diverse computations. They agree that the amounts of depletion allowable under the opinion of the court must be computed for both years in conformity with section 204 (c) (2) of the Revenue Act of 1926 [1] and that the only question submitted to us is the amount of gross income received by the petitioner under its contracts in the years 1925 and 1926, respectively.

In its own plant the petitioner converts the wet gas acquired under contracts into commercial gasoline. It contends that the total amounts realized from sales of such gasoline in any given year should be regarded as the gross income from its property in the

---

[1] SEC. 204 (c) (2) In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowances for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.

contracts under which it acquires casinghead gas from the owner of gas and oil properties, or at least by such amount reduced only by royalties paid under the contracts. The respondent contends that the extraction of commercial gasoline from casinghead gas is manufacturing, that the gross returns from the sale of such gas is income therefrom and not from the exploitation of a natural resource, and that the gross income, if any, from petitioner's property in contracts to purchase casinghead gas must be measured by the fair market value, or field price, of the wet gas as and when received by the petitioner at the mouth of the well or wells for use as raw material in the manufacturing operations, reduced by the amount of royalties paid under the contracts.

Apparently the petitioner's theory is that in marketing gasoline extracted from wet gas in its own plant it sells only what it acquires under its contracts and that the necessary processing or conversion is a mere preparation for sale by cleaning or otherwise. In *Brea Canon Oil Co.*, 29 B.T.A. 1134, we discussed and decided a similiar contention. We held there that the conversion of wet gas into marketable gasoline is manufacturing, that receipts from the sale of the finished product in their entirety must be regarded as gross income from manufacturing operations, and that the cost of the raw material, the wet gas, is an element thereof only to the extent of its fair market value as and when received by the manufacturer at the mouth of the well.

In the circumstances here the petitioner is a producer from oil and gas property. *Signal Gasoline Corp., supra.* In fact, however, it produces raw material only. It is also a manufacturer converting raw material into a finished commercial commodity. *Brea Canon Oil Co., supra.* Its income as a producer from oil and gas property is subject to depletion. Its gross income as a manufacturer is reducible to taxable income by the deduction of all the expenses of its operations, which include cost of raw material and depreciation resulting from the wear and tear of physical assets which it owns and uses in its business. Since, as a manufacturer, it is not engaged in producing from a natural resource reserve, its gross income from manufacturing forms no basis for the computation of depletion allowances. It recovers the entire cost of its raw material, including royalties, in the sale price of its finished product.

The petitioner contends that in determining gross income from its interest in the oil and gas property royalties to be paid under its contracts should not be deducted from the amounts realized in its operations. The opinion of the court reversing our original decision in this proceeding is in effect that petitioner's contracts are in the nature of leases through which it acquired interests in oil and gas

producing properties. Section 214 (a) (9)[2] of the Revenue Act of 1926 provides that in cases of leases deductions allowable for depletion shall be equitably apportioned between lessors and lessees. Obviously the royalties are the gross income of the lessors and the amount thereof is the basis for computing the proportion of depletion to which such lessors are entitled. It is well established that a taxpayer may not claim the benefit of a deduction which the statute grants to another. *Dalton* v. *Bowers*, 287 U.S. 404; *Burnet* v. *Clark*, 287 U.S. 410; *Burnet* v. *Commonwealth Improvement Co.*, 287 U.S. 415. It follows that the gross income of the lessee from the same production, if any, must be the excess of the fair market value of the wet gas as and when received, over the royalties which it pays under its contracts. The contention of the petitioner would result in a double deduction from the same gross income, first for depletion and second by the subtraction of cost of raw material from its gross income from manufacturing.

If the fair market value of wet gas when received by the lessee is not greater than the royalties which it pays, there is no income of any kind from its property in the leases and, consequently, no gross income that can be used as a basis for computing depletion. In the circumstances herein the petitioner must show that when received by it the wet gas had a fair market value in excess of royalties paid to the lessors. This it has failed to do, and in the absence of such showing we must assume that the fair market value of the wet gas was not in excess of the royalties paid. We conclude, therefore, that in the taxable years the petitioner had no gross income from its interest in oil and gas producing property within the meaning of section 204 (c) (2) of the Revenue Act of 1926, and so is entitled to no allowance for depletion in such years. Since this is the only question necessary for us to decide under the mandate of the United States Circuit Court of Appeals, it follows that the deficiencies for the years 1925 and 1926 are in the respective amounts of $19,340.18 and $40,804.19, as determined by the respondent.

Reviewed by the Board.

*Decision will be entered accordingly.*

---

[2] SEC. 214 (a) In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(9) In the case of mines, oil and gas wells, other natural deposits and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In the case of leases the deduction allowed by this paragraph shall be equitably apportioned between the lessor and lessee.