WILLIAM H. CREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

RUTH A. CREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 105667, 105835. Promulgated October 13, 1942.

*Maurice Levy, Jr., Esq.*, for the petitioners.
*Byron M. Coon, Esq.*, for the respondent.

870

DISNEY: The petitioners acquired by assignment two separate oil and gas leases. Both before and after and with such acquisition they

also acquired certain fractional interests which the previous lessee had sold. These provided for participation in the working interest, that is, the lessee's interest, after payment of royalties, but each was limited to a particular well. In filing Federal income tax returns, the petitioners reported the income from the participating interests as "royalties" and separately reported the income from leases as income from business or profession. Depletion was claimed as to both classes of interest. The Commissioner in determining deficiencies allowed depletion upon the income from the leases to the petitioners as lessees, and does not now deny such depletion, taking issue only upon the method of computation thereof, i. e., he argues that depletion allowable to petitioners as lessees should be computed upon each lease as a "property" within the meaning of section 114 (b) (3), Revenue Act of 1938, while the petitioners urge that each well is a property. With reference to the position of the petitioners as holders of rights to participation, the Commissioner allowed depletion, but only upon the amounts remaining after deduction of certain expenses, this view being based upon the language of the assignments of the rights to participate, which the Commissioner regarded as reducing the petitioners' gross income for depletion purposes to the amounts received by the participant after payment of the expenses provided for. Upon brief, and without any pleadings asking for increased deficiency, the respondent urges that the participants had, under their assignments, only a right to net amounts, not constituting depletable interests.

After careful examination of these interesting questions, we are of the opinion that the petitioners are entitled to compute depletion upon the gross amounts received by them from the properties, and that under the circumstances here presented each lease constitutes a property, so that depletion is limited to 50 percent of the net income therefrom, under section 114 (b) (3), Revenue Act of 1938, requiring therefore consideration of those wells the operation of which resulted in loss. Though no case is suggested, or found by us, which presents a parallel to the situation here presented, we think it clear from *J. T. Sneed, Jr.*, 40 B. T. A. 1136; affd., 119 Fed. (2d) 767; certiorari denied, 314 U. S. 686, and *Allie M. Turbeville*, 31 B. T. A. 283 (292); affd., 84 Fed. (2d) 307, that in general the land covered by an oil and gas lease constitutes a "property" within the statute. The latter case says: "The term 'the property' applies to the particular acreage covered by each of the several leases." In *Vinton Petroleum Co. of Texas*, 28 B. T. A. 549; affd., 71 Fed. (2d) 420; certiorari denied, 293 U. S. 601, the same is held, where eight different but neighboring tracts were involved, and taxpayer sought to consider all as one "property." Though in *Helvering* v. *Jewel Mining Co.*, 126 Fed. (2d) 1011, the court held that there were two properties where a lessee of coal land

subleased a part of the land, this only emphasizes the idea that there was a separation of acreage, and that such is the sound test of what constitutes a property. The court points out that the taxpayer retained its lease on one part of the land, but subleased "another part of the land," and that each party operated separately. Herein, the owner of certain rights under the lease purchases the same lease. In *Mascot Oil Co.*, 29 B. T. A. 652, we held that a lessee of oil-producing land did not create a new "property" by granting an exclusive sublease to drill to depths below 1,600 feet. The petitioner cites G.C.M. 22106, C.B. 1941–1, p. 245, wherein it is stated, *inter alia*, that a single tract or parcel of land may be divided into two or more separate tracts or parcels by means of conveyances or leases "carving up the original 'tract' or 'parcel'," and that a taxpayer with several interests in a tract has several properties therein. But we do not think the idea soundly applied here, where the whole leasehold is acquired by one formerly owning only certain limited rights with respect thereto.

We think we are not here faced with the question of depletion by a mere holder of a participating interest in the working interest or leasehold, nor required to base our conclusion upon the form of his instrument of participation, for here the petitioners, in addition to acquiring rights to such participations in the working interests limited to certain wells, have acquired the leaseholds, on each lease. The participating interests were carved out of each leasehold, that is, the lessee (in order to obtain funds for drilling operations) assigned small fractional interests in his working interests, designating them as applying to particular wells. Though so designated and limited, they were obviously interests in the lease, in that they conferred rights growing out of the lease and granted by the holder thereof, even though not applying to all of the production upon the lease. The lease indeed constitutes a mere right to participate in, that is receive, the production from all wells, except in so far as that right is assigned, with the duty of paying expenses. Thus no essential difference is seen between lease and participating interest, and when the petitioners acquired the leaseholds, as well as the fractional interests in rights thereunder sold by the lessee, there was effected a merger of interests, so far as the petitioners were concerned. 21 C. J. 1037. *Higgins* v. *California Petroleum & Asphalt Co.*, 41 Pac. 1087. The rights to participation were merged with the leasehold in which they participated. We see nothing to prevent such merger, and no reason to view the petitioners in two different stati, that of lessees, and, separately, that of participants in leasehold rights, i. e., in the right to production under the lease (though only from a single well). No intervening estate in law or equity appears to prohibit the merger of the lesser participating right in the larger leasehold estate. It is

as if the limited right to participate had been canceled. The leasehold is no longer burdened with it; and the lessee can not logically present a participating right or charge against himself as giving him a different status for purposes of computation of depletion.

We need not here decide whether a single tract of land may be the subject of more than one "property" by division of estates or interests therein among different owners, as argued between the parties; for here such different estates or interests, growing out of the same lease, rest in the same person, and are not seen as calling for viewing such party in more than one category. He owns a lease, save only so far as rights have been conveyed to, and remain in, others.

We conclude and hold that the petitioners have only one property right in each lease, and that it can not be divided by considering as a unit each well as to which participating rights had been sold, where such rights had returned to the lessee. It follows from this that depletion must be limited to 50 percent of the net income from each of the two leases, each of which we hold to be a "property" of the petitioners; it also follows that depletion should, subject to such limitation, be computed upon the gross income from each lease, received by petitioners both as lessees and as participants, for as lessees the petitioners are entitled to the entire income therefrom, subject only to interests held by the participants-assignees; and that the expenses of operating, maintaining, and repairing the wells may not be deducted before computation of depletion, under section 114 (b) (3), Revenue Act of 1938, except of course, as above stated, in calculating the limitation of depletion to 50 percent of net income from each lease. This view renders it unnecessary to consider other issues.

*Decision will be entered under Rule 50.*